The District Court committed procedural error in refusing to apply the terrorism enhancement on two independent grounds, and Khan does not defend the District Court's decision on either ground. Rather, Khan contends that the terrorism enhancement does not apply because, although he concedes his offense was calculated to influence or affect the conduct of the government of Syria, the United States has said it considers the Syrian Opposition Coalition to be a legitimate representative of the Syrian people. So the dispute before the Court today is what is the legal effect of that statement on whether the terrorism enhancement applies? And the answer is none, because at all times relevant to this litigation through today, the United States has consistently recognized the Assad regime as the government of Syria. Sotomayor Do we have to reach that issue? Asher Khan You do not. You could decide that Khan's offense was also calculated to influence or affect the conduct of the governments of the United States and Iraq. But if this Court does reach the question about the government of Syria, at all times relevant to this litigation through today, the United States has consistently recognized the Assad regime as the government of Syria. And although State Department officials have said that the United States considers the Syrian Opposition Coalition to be the legitimate representative of the Syrian people, those officials were very careful to make clear that those statements of political support do not confer on the SOC legal status as the government of Syria, but rather that it's the Assad regime that remains the government of Syria. These statements were just messages of political support to give the SOC a political boost and then to signal to the international community that the United States was strengthening its ties with the Syrian opposition in general. But not to derecognize the Assad regime. So because the Assad regime remains the government of Syria, his offense was calculated to influence or affect the conduct of government and the terrorism enhancement applies. But the terrorism enhancement also applies because his offense was calculated to influence or affect the conduct of other governments, including the that his offense can be considered terrorism against the United States when he was providing material support to ISIS for the purpose of opposing the Assad regime, a regime that even the United States government opposes. Here's how. First, to the extent that Khan suggests that he was actually trying to help the United States government, well, that's a position that's contradicted by his statements in the record. On page 33 of the record, he was telling his friend on January 24, 2014, Ifrah Farouk, that yes, he was going to Iraq and Syria in order to establish the Islamic State there and to die while fighting as a martyr. But he knew that when he did that, he would not be able to return to the United States because he would be acting against its troops and its agenda. What this statement reflects is that Khan was aware of ISIS's terrorist activities and that the United States was nothing more to ISIS. So it sounds to me like it's got to be more than Syria is a government entity. Otherwise, people who fought alongside the United States against Germany would be considered conducting terrorist activity. This court's precedents hold that the terrorism enhancement can apply even if the offense was calculated to influence or affect the conduct of a foreign government in the United States versus Puerto, that the Sixth Circuit has held the same in the United States versus a C, and the defendant here concedes on page 18 of his brief that the offense would apply even if it was calculated to influence or affect the conduct of a foreign government. In Puerto, for example, this court adopted the rationale of the Southern District of Texas in United States versus Diamaris, and there the court explained that unlike other provisions of section 2332B, like section 2332B, B1C, that refer specifically to the United States government, section 2332B, the provision that's incorporated by the terrorism enhancement here, refers broadly to the government. And so there's no textual support for the conclusion that the influence or retaliate element has just this United States government requirement. But Khan's offense, I think a helpful way of understanding how Khan's offense was also calculated to influence or affect the conduct of the United States government is that his awareness, it does come down to what is in his mind. His awareness is the key. So our precedents hold that motivation is irrelevant to the influence or retaliate element. That's because the question is whether the offense was calculated to influence or affect the conduct of government. So whereas motivation asks the question, why did the defendant provide material support to a terrorist organization? Calculation asks, when the defendant provided material support to the terrorist organization, did he do so knowing that the organization had amongst its goals coercing government conduct? And that's why this precedents hold, for example, in United States v. Alma Zane, that the government may prove the requisite intent with evidence that the defendant provided material support to a foreign terrorist organization with the awareness that the organization has engaged in terrorist activity or has as its goals coercing government conduct. And that this evidence establishes that because of the defendant's awareness, his provision of material support to the terrorist organization was intended to advance those goals. And let's apply that rule here to Khan's conduct in particular. And I think this is a helpful way of understanding how his offense could be terrorism against the United States. Let's suppose for purposes of this argument that when Khan provided Garcia to ISIS in Syria and Iraq, and Garcia joined ISIS, as he did on August 11th of 2014, and he went there and he saw that there were two bands of ISIS fighters. One band of ISIS fighters that was committed solely to terrorist attacks against the United States, and another band of fighters that was committed solely to terrorist attacks against the Assad regime. And let's further assume that Garcia was able to successfully convince the ISIS leader under whose direction and control he was working that he would fight only for the band of fighters that was fighting against the Assad regime. His offense would still be calculated to influence or affect the conduct of the United States government, because by providing resources to the team that was fighting against the Assad regime, that allowed ISIS to divert and free up other resources to support the team that was fighting only against the Assad regime, excuse me, the United States. And this rationale was endorsed by the Supreme Court in Holder v. Humanitarian Law Project in the context of financial funding. But there's more evidence in the record that Khan's offense was calculated to influence or affect the conduct of the United States and Iraq, beginning first with the fact that he was well aware of ISIS's terrorist activities, having pleaded guilty to providing material support to ISIS, knowing that it engaged in terrorist activities and knowing that it targeted those activities against the United States. And two, he admitted to the district court at sentencing that he was an avid consumer and distributor of ISIS He sent to his friend Humza Beg on July 1st of 2014 a speech by Abu Bakr al-Baghdadi, the leader of ISIS, in which al-Baghdadi glorifies using terrorism as a tool to destroy Western democracies and called upon all countries and Muslims to take up arms against America, Americans and other governments, including Syria and Iraq. But Khan did not just consume and distribute extremist propaganda of ISIS. He supported those goals in word and deed. First, as part of his agreement to plead guilty, he admitted that he recruited his friend Sexto Romero Garcia to be a fighter for ISIS, that he himself traveled to Turkey to be a fighter for ISIS, and that he was successful in providing Garcia to ISIS as a fighter in Syria and Iraq, where he further admitted the record reflects that Garcia ultimately died while fighting for ISIS in Iraq. The record also shows on page 33, as I said, he told his friend Ifrah went to establish the Islamic State in Syria and Iraq, he would not be able to return to the United States because he would be acting against their troops and the agenda. And he told four different people from December of 2013 throughout January of 2014 that he was providing material support for the purpose of advancing ISIS's goals of establishing the Islamic State in Syria and Iraq. He told his friend Mayis Swede, who had relatives in Iraq, that he was going to ISIS, to Iraq in order to join ISIS, and asked whether he could have the contact information for Abu Bakr al-Baghdadi. On January 6, he told Garcia, when he recruited him, that he was going to Iraq to join ISIS. And then he told an unidentified person who apparently was a recruiter for ISIS on January 19, that he was going to Iraq to join ISIS and Syria as well, where he was going to establish the Islamic State and die while fighting as a martyr. And then, of course, he told his friend Ifrah Farouk on January 24 of 2014 the same thing. And on page 731 of the record, Khan was speaking to the recruiter for ISIS, and he told this recruiter, he asked whether he could have the location of ISIS's headquarters in Iraq so that he could personally pledge an oath of allegiance to Abu Bakr al-Baghdadi, the leader of ISIS. So for all these reasons, the terrorism enhancement did apply, and the I'm happy to address those grounds if this Court would like. Now, that goes to the procedural unreasonableness. Yes, Your Honor. You did not claim substantive unreasonableness in the district court, as I understand it, so we review that for plain error. If we decide to look at substantive unreasonableness, how do you satisfy the plain error standard? First, the government would respectfully request that this Court await the Supreme Court's decision in Holguin-Hernandez v. United States, where the Supreme Court granted certiorari to consider the question whether a Well, I can tell you right now we're very unlikely to do that. I mean, that's a valid Fifth Circuit opinion. It hasn't been vacated, despite the fact that the Supreme Court will be looking at it. So assuming that we consider ourselves bound by that opinion, how can you satisfy plain error? The district court's sentence of 18 months was substantively unreasonable for two reasons. First, because it trivializes Kahn's conduct to suggest that he was simply a young, disaffected American who was helping a friend who had already made his own independent decision to join ISIS. The record shows on pages 628 and 629 that Kahn pleaded guilty to providing material support to ISIS, knowing that that terrorist organization engages in terrorist activity that's specifically targeted at the United States and other countries, as I said, Syria and Iraq. Two, he admitted that as part of that agreement, he provided his friend Sixto Romero-Garcia as a fighter for ISIS, where Garcia ultimately died while fighting in Syria and Iraq, well, while fighting, he actually died in Iraq while fighting for ISIS. With that in the record, I thought there was speculation that he died. So we don't know for sure that he's dead, much less exactly where. Well, Kahn admitted as part of the plea agreement and the stipulation of fact that the implication of the evidence in the record is that Kahn did die, excuse me, Garcia did die while fighting. And his mother received confirmation of that, is that right? That's correct. On December 24th of 2014, or 25th of 2014, she received a message from Garcia's Facebook account. And then this message, it was not from Garcia, it was from a person who claimed to have been with Garcia fighting in Syria. And he said that the last he saw of Garcia, Garcia had, was on his way to fight in Iraq, and that's where this individual believed that Garcia died. And the implication being from that was that he died while fighting in Iraq. What are we to make of the fact that you're telling us now that that error was plain and the government, with plenty of resources, just didn't, didn't raise it at sentencing? The government concedes that under this Court's current precedence, the plain air standard of review applies and that the government did not preserve that claim. But the government's position is that the sentence of 18 months of imprisonment is still substantively unreasonable. And for the additional reason that the evidence in the record shows that Kahn told Garcia that his idol was Anwar al-Awlaki, one of the most radical and dangerous extremists in recent history, he was killed by the United States in Yemen in 2011 in a drone strike. And he was the most significant recruiter for al-Qaeda in the Arabian Peninsula, having published online hours of extremist propaganda that are still considered today some of the most effective recruitment tools for extremists. And in particular, amongst English speakers like Garcia and Kahn. And he espoused a violent strain of jihadist ideology, one that taught that Islam was under attack and therefore it was the duty of every Muslim to defend Islam either by committing attacks in the homeland or by traveling abroad to where the jihadists were fighting and joining in the fight. But to be sure, Kahn was following in the footsteps of his idol, Anwar al-Awlaki. He aligned himself with Anwar al-Awlaki. He consumed and distributed extremist propaganda online. He radicalized his friend Sixto Ramiro Garcia and then he proceeded to provide Garcia to ISIS as a fighter in Iraq where the record reflects that Garcia ultimately died while fighting. And the record also shows that Garcia wasn't the only friend of Kahn's that he attempted to radicalize. On pages 35 and 171 of the record, for example, he also tried to recruit his friend, Ifrah Farouk, by telling her that he wished that he could inject into her everything he knows about Anwar al-Awlaki and he wished that he could create the love he has for Anwar al-Awlaki in her and in other Muslims. And then of course he sent his friend, Humza Baig, on page 717, ISIS propaganda that was glorifying the use of terrorism to destroy Western democracies. While you have time, let me ask you, I don't find anywhere in your brief that you're requesting that this be remanded to a different district judge. Is it the position of the Department of Justice that that would be inappropriate here if we were to assign to a different district judge for resentencing? Yes, Your Honor. We do not contend that this court need to assign the case to a different district court judge. The district court here made a procedural error that is not defended by Khan. And if this court concludes that it must nonetheless reach the substantive reasonableness claim, we would respectfully request that you await the decision, Holguin Hernandez v. United States. But either under the traditional abusive discretion standard of review or the plain error standard of review, that sentence was error and should be vacated. Thank you, Your Honor. To the best of your knowledge, is Khan still in a halfway house? To the best of my knowledge, he is. He is scheduled to go to home confinement on October 4th. And his full release is in November sometime, is that right? November 26th, Your Honor. Is there a mootness issue at that point? No, Your Honor, because he can still be remanded to the custody of the Bureau of Prisons if the district court increases his sentence. Well, all right, but what if we don't rule until after he's been fully released? Is there a mootness issue then? No, Your Honor, because he can still be reapprehended and for the purposes of serving the longer sentence. And is there a period of supervised release as part of the sentence? Yes, Your Honor. How long is that? I'm not familiar with the . . . Well, that's okay, I won't take time, but there is a supervised release period. Yes, Your Honor. All right, you say time for rebuttal. Thank you, Ms. Tarrant. Mr. Adler? May it please the Court, just to answer Judge Smith's question, I believe it's a five-year term. Okay, thank you. All right. What the government is asking this Court to do . . . And you're not contending that there'd be a mootness issue if we didn't rule until after the full release in November? I don't think it would be a mootness issue either, Your Honor. Okay. May it please the Court. What the government is asking this Court to do is squarely contradicted by Supreme Court precedent as well as precedent from, I think, every circuit court of appeals. And what the government is asking this Court to do is substitute its own judgment for what the sentence should be for what the district court felt was the appropriate sentence. The review of the district court's sentencing decisions are highly deferential. Well, if you made a procedural error, and it seemed to us from reading the record that he did not . . . he said that the enhancement does not apply. And if he's wrong about that, isn't that a procedural error? If this Court was to determine that the enhancement should have applied, then yes, I . . . Or that his decision that it does not apply is an error. In other words, he didn't make any factual findings that even if it did apply, for the reasons he said it didn't, he didn't make factual findings. I would argue, Judge, that even if that is the case under your hypothetical, it would be a harmless error because, obviously, the enormity of the difference between the calculated . . . what the government believes the calculated sentence should have been with the enhancement versus what was imposed indicates he's going to sentence the defendant the exact same way. He didn't say that. No, you're correct, Your Honor. He did not. I wish he did. It would have made a very different appeal at this point. But, no, you're correct. He did not say that. Nonetheless, the fact that the government doesn't like the sentence, or, in fact, even if, with all due respect, if this Court doesn't like the sentence, that's not sufficient to overturn the sentence. We're not saying that. And I understand that now. As far as the enhancement, though, I don't think there's any dispute that the President of the United States said that the Syrian opposition coalition was the recognized representative of the Syrian people, and the Secretary of State of the United States at the time said . . . What about Iraq? I'm sorry, I didn't hear you. What about Iraq? I don't agree with the government's contention that this Court can infer somehow that Mr. Khan was interested in doing anything other than opposing what he called the dictator Assad in Syria. I'm sorry, the government has sort of an attenuated logic of how the mere fact that he wanted to oppose Assad can somehow mean he was going to assist in ISIS operations, pardon me, against the U.S. or Iraq. I don't think there's evidence in the record of that. There's an assumption on the part of the government, but the evidence is just not there. So I think if a criminal defendant is accused of doing something that is squarely contradicted by comments made by . . . we're not talking about a county sheriff here or a court clerk. We're talking about the President of the United States and the Secretary of State of the United States saying that Assad is not the legitimate representative of the Syrian people. So I think that the district court was entitled to determine that Mr. Khan's intent was not to influence the Syrian government because of those comments by the President and the Secretary of State. So I would argue that there was no procedural error and that even if there was, if this was in light of the clear intent of the district court to sentence Mr. Khan to something significantly lower. And again, I point out in my brief that this district court was well aware of its ability to impose a harsh sentence even if the court chose to reject the terrorist enhancement. In a prior case that's cited in the brief, U.S. v. al-Hardan, same district court, essentially the same kind of case, district court rejected the terrorist enhancement and then sentenced the defendant to, I believe, 192 months. So the error that . . . if this court was to rule that it was a procedural error, it would be a harmless procedural error. If this were flipped and if you were representing the government, the case would probably be decidedly against you. Wouldn't that be a fair characterization? If this were flipped, meaning . . . No. With all due respect . . . The district court has to correctly calculate the guidelines range. And then the sentence has to be based off of that. I understand what you're saying, Judge. But I don't think the case law would be entirely against me. There are those cases that hold. There are instances where procedural error has been held harmless, both by this court of appeals and other courts of appeals. So I understand the majority. There are a lot of cases that say exactly what you're describing. What's your best case, post the Supreme Court's recent line of cases, on what constitutes harm in these circumstances? I'm sorry. What is . . . The Supreme Court's been, in the last few years, has, I think, narrowed the gap of what's not harmful. And what's your best case, in light of those cases, that when the district judge erroneously fails to calculate the guidelines range correctly, there's no harm? Why don't I just grab my briefers? So there are a number of cases. I would say a case from this court in 2005, Jaluke, J-U-L-U-K-E, Cruz from 2005, also from this court, and even Ragsdale from this court in 2005. But I believe there's . . . Yeah, I would say those cases support the proposition that if a procedural error has occurred, if this court determines a procedural error was made, and the error is harmless, then there's no reason to reverse the sentencing decision or remand it back to the district court. I don't know if I've answered your question. No, but that's okay. I'm sorry. I think the government has long tried to paint a picture of Mr. Khan that the district court just didn't buy into, and that the government's disagreement over those facts doesn't warrant reversing the conviction—I'm sorry, the sentence. The government never really fully explained why, if Mr. Garcia was painted as a victim of being recruited by Mr. Khan, why Mr. Khan wasn't entitled to the same perception of being a victim when he was recruited by ISIS. The district court felt that the issue of Mr. Khan's involvement with Mr. Sixto was more akin to two young men who were—I think the terms he used were naïve, stupid, foolish, bored, restless, insignificant, with some testosterone. And the district court felt that these two young men decided that they had found a shortcut to fame and fortune. So this portrayal that Mr. Khan was the only motivating factor in Mr. Garcia's decision, whether this court believes it's correct or I believe it's correct, the fact is the district court clearly did not believe it's correct. And so as far as the substantive reasonableness of the sentence, the district court discussed not necessarily in one succinct paragraph—I concede that—but throughout the sentencing hearing, the district court discussed a number of characteristics of Mr. Khan and his conduct both during the underlying facts and while the case, while he was on pretrial release to justify the imposition of the sentence. I would also point out that although the government may not agree with this, 18 months in prison is not necessarily a light sentence for a 19-year-old man. That's—18 months in prison is not something—we're not talking about two days in the county jail. I would also point out now that if this case is remanded, the district court could also consider Mr. Khan's exemplary record while he was incarcerated and his efforts to improve his education or continue his education. So we have even additional reasons that would justify the sentence as unusual as it is, which I concede. The statutory maximum here would be 180 months, is that right? Yes, I believe that's correct. Ten times what was given. More than ten times what was given. Yes. And again, Judge, I don't dispute that it's a significant departure. But again, the Supreme Court of the United States says that this court should not change that sentence simply because this court might impose a different sentence if presented with those facts at the district court level. The question is why did this court impose this sentence on this defendant in this case? But if there's procedural error, generally, as Judge Owen indicated, we give the district judge an opportunity to resentence under what we say is the correct view of the law and to make factual findings based on that correct view of the law. Yes. Obviously, if this case is remanded, I don't know what the district court is going to decide. But I think given the enormity of the difference between what the government was asking for and what was ultimately imposed, it would not be unusual for the district court to impose the same or at least a similar sentence. But you're asking us to assume that, which is the polar opposite of whatever you're arguing, that we shouldn't get involved in subsequently evaluating the sentence. I agree. What I'm saying — I'm sorry. You're asking us to do one thing on one hand and the exact opposite on the other. So let me be clear then. What I'm saying is I don't believe there was procedural error here because of the statements by the President and Secretary of State with regard to the recognized legitimate representative of Syria at the time. And I'm further saying — so the terrorist enhancement, there is a legitimate basis for the district court to decide it does not apply. If the court had decided to apply it, it's a different story. But there was a legitimate basis for this district court to make that decision. And second, I would argue that even if this court was to determine it was a procedural error, it was harmless under the circumstances of this case. If there are no other questions, I'll sit down. Thank you, Mr. Adler. Ms. Tarrant for rebuttal. Your Honors, on harmlessness, the three cases that Kahn cited are cases in which the defendant did not have a preserved booker error. And so he was raising an unpreserved booker error, and the question there was whether the defendant had proved that the booker error affected his substantial rights. And those cases don't apply here because the government did preserve its procedural reasonableness claim, and so the standard of review is de novo for legal errors. And the case that I would direct from the Supreme Court this court to is Molina-Martinez versus the United States, where the court explained that whether a guideline's calculation is error depends on the nature and magnitude of the error. And here the error was not harmless because the magnitude of the error was enormous. The correct calculated guidelines range was 180 months of imprisonment. The incorrectly calculated guidelines range was 46 to 57 months, so the error resulted in reducing the applicable guidelines range by more than two-thirds. And so if this court were to correct the error for the district court to reimpose the same sentence, he would have to vary downward by 90 percent, which I think is enough to dissuade the district court from imposing the same sentence, and at least it would be a daunting task to justify such an extravagant variance under the facts of this case. But the question is not just whether the district court would have imposed a below-the-guidelines sentence because I think it's fair to say that the district court would have imposed a below-the-guidelines sentence even if he had properly calculated the guidelines range, but would he have imposed this precise sentence is the question. And given the magnitude of the district court's error, coupled with the fact that he did not explicitly state that he would have imposed the same sentence, I think it's sufficient for this court to conclude that there is a reasonable probability of a different outcome on appeal, on remand, excuse me, and then second, on the terrorism enhancement. Here, Kahn, and I think to a greater extent Amicus, fundamentally misunderstand the terrorism enhancement. Motivation, in other words, why he provided material support to the terrorist organization is irrelevant. This court's precedents hold that the government may prove the requisite intent with evidence that the defendant provided material support with the awareness that the terrorist organization had amongst its goals coercing government conduct and that this evidence establishes because he was aware of the terrorist organization's goals, his provision of material support was intended to advance those goals. And the record is clear. Several statements that Kahn has made where he says that he was going to Iraq in order to join ISIS for the purpose of establishing the Islamic State in Syria and Iraq, which would require him, if not to overthrow the secular governments that are in place, would at least require that he grab land and control territory on behalf of the Islamic State. And his statements to Garcia when he was continually encouraging Garcia to join ISIS as a fighter and not to stop at the training camps reflect that he understood this because on July 1st of 2014, he asked Garcia whether he had realized that Abu Bakr al-Baghdadi had declared the establishment of the caliphate after al-Baghdadi had declared that ISIS had controlled large portions of territory in Syria and Iraq. But I think the most important thing for this court to take away today is not to lose sight of the fact that Garcia is dead because of Kahn's actions. And if Kahn had not recruited him to be a fighter for ISIS, he would still be here today. So for all these reasons, the government respectfully requests that this court vacate the sentence and remand the case for resentencing. Thank you. All right. Thank you, Ms. Taran. Your case is under submission. Mr. Adler, we noticed that your court appointed, and we wish to thank you for your fine work on behalf of your client, as you always do, and we appreciate your candor to the court as well.